**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

G & G CLOSED CIRCUIT EVENTS, LLC,

Plaintiff,

v.

REMSEN ASSOCIATES, INC. T/A LOS AMIGOS, et al.,

Defendants.

Civil Action No. 19-13019 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff G & G Closed Circuit Events, LLC's ("Plaintiff") Motion for Default Judgment against Defendants Remsen Associates, Inc. t/a Los Amigos ("Los Amigos") and Bernabe Rodriguez ("Rodriguez") (collectively, "Defendants"). (ECF No. 16.) Defendants have not responded or otherwise appeared in this case. The Court has carefully considered Plaintiff's submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons set forth herein, Plaintiff's Motion is granted in part.

## I. BACKGROUND

### A. The Program

Plaintiff "is a closed[-]circuit distributor of sports and entertainment programming." (Gagliardi Aff. ¶ 3, ECF No. 16-1.) The Complaint alleges that Rodriguez owns and operates Los Amigos, a commercial establishment located in New Brunswick, New Jersey. (Compl. ¶¶ 7–12, ECF No. 1.)

By contract, Plaintiff purchased the exclusive rights to exhibit a closed-circuit telecast of the May 6, 2017 Championship Fight Program between Saul Alvarez and Julio Cesar Chavez, Jr., (the "Program"). (Compl. ¶ 19; Gagliardi Aff. ¶ 3.) Pursuant to the contract, Plaintiff entered into sublicensing agreements with commercial establishments to permit the public exhibition of the Program. (Compl. ¶ 20.) The transmission of the Program was encrypted and made available only to Plaintiff's customers—commercial locations that paid the requisite license fee to exhibit the Program. (*Id.* ¶¶ 21–22, 24–25.)

As part of its efforts to deter piracy, Plaintiff retained auditors and law enforcement personnel to identify establishments that unlawfully accessed and aired the program. (Gagliardi Aff. ¶¶ 5–6.) On May 6, 2017, Plaintiff's investigator, Steven Aimetti ("Aimetti"), observed the unauthorized exhibition of the Program at Los Amigos. (*Id.* ¶ 7; Aimetti Aff. *19,[1] Ex. B to Gagliardi Aff.) Aimetti counted approximately twenty patrons at Los Amigos, which has a capacity for approximately eighty people. (Aimetti Aff. *19–20.) According to Plaintiff, the cost to broadcast the Program lawfully at the estimated capacity was $2,200.00. (Gagliardi Aff. ¶ 8.)

**B. Procedural History**

On May 29, 2019, Plaintiff filed a four-count Complaint against Defendants. (*See generally* Compl.) Counts One and Two allege violations of the Communications Act, 47 U.S.C. §§ 605, 553. (*Id.* ¶¶ 27–41.) Count Three asserts a claim for unlawful interference with prospective economic advantage. (*Id.* ¶¶ 42–47.) Count Four asserts a claim for unlawful interference with contractual relations. (*Id.* ¶¶ 48–53.) On July 10, 2020, the Clerk entered default against Defendants for failure to plead or otherwise defend this action. (*See* ECF No. 15.) Plaintiffs now moves for default judgment.

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

## II. LEGAL STANDARD

Rule 55[2] allows a court "to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Whether to grant default judgment is left "primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper[.]" *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted).

To determine whether granting default judgment is proper, the Court must consider: (1) "prejudice to the plaintiff if default is denied"; (2) "whether the defendant appears to have a litigable defense"; and (3) "whether [the] defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## III. DISCUSSION

### A. Subject-Matter Jurisdiction & Personal Jurisdiction

As a threshold matter, the Court finds that it has subject-matter jurisdiction over Defendants. Specifically, the Court has federal question jurisdiction pursuant 28 U.S.C. § 1331 because Plaintiff brings this civil action pursuant to the Communications Act. (Compl. ¶¶ 1–2.)

The Court also has personal jurisdiction over Defendants in part because they were sufficiently served. *See Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant."). Under Rule 4(e), service of process upon an individual may be effected by "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e)(2)(A). Under Rule 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B).

Here, Plaintiff filed proof of service as to both Defendants. With respect to Los Amigos, the proof of service states that the summons and complaint were served on a Juan Rodriguez ("Juan R.") and that Juan R. was "authorized to accept service." (ECF No. 4.) The record, however, does not identify whether Juan R. is an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process on behalf of Los Amigos. It is unclear, therefore, whether Plaintiff properly served Los Amigos through Juan R. Nevertheless, Plaintiff filed proof of service as to Rodriguez, which indicates that Rodriguez was served at Los Amigos's principal place of business. (ECF No. 12; N.J. Business Gateway *9, Ex. B to Peters Certif., ECF No. 16-2.) Plaintiff also submits a business report on Los Amigos, obtained from the State of New Jersey's website, that lists Rodriguez as a servicing agent and Chief Executive Officer of Los

Amigos. (N.J. Business Gateway *9–10; *see* Compl. ¶¶ 8–9.) On these facts, the Court finds that Plaintiff sufficiently served both Defendants. The Court also finds that it has personal jurisdiction over both Defendants.

**B. Legitimate Cause of Action**

Plaintiff seeks to hold Los Amigos and Rodriguez individually liable under Section 553 and Section 605 of the Communications Act. (Pl.'s Moving Br. 4–7, ECF No. 16-3.)

Sections 553 and 605 both prohibit the unauthorized interception of communications. 47 U.S.C. §§ 553, 605. They "provide for alternative forms of relief depending on *how* the defendant intercepted the program at issue—i.e., the interception of actual airborne satellite transmissions (section 605) or the interception of transmissions once they reach the cable system (section 553)." *J&J Sports Prods., Inc. v. Munguti*, No. 06-1282, 2007 WL 928479, at *1 (D.N.J. Mar. 27, 2007). When the defendants' "failure to appear has deprived [the] [p]laintiff of its ability to determine which statute applies[,] . . . [c]ourts in this district award damages under either (but not both) sections' damages provisions." *J&J Sports Prods., Inc. v. Tribiri-Tabara, LLC*, No. 18-13867, 2019 WL 2754955, at *2 n.1 (D.N.J. July 2, 2019) (citation omitted).

**1. Los Amigos**

"When a plaintiff seeks relief under either statute, 'its burden is to show that the [entity] (1) intercepted a broadcast; (2) was not authorized to intercept the broadcast; and (3) showed the broadcast to others.'" *Id.* (quoting *Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *3 (D.N.J. Mar. 13, 2013) (citation omitted).

Here, Plaintiff adequately alleges that Los Amigos intercepted and exhibited the Program to others without authorization. The record contains an affidavit submitted by Plaintiff's president, Nicolas J. Gagliardi ("Gagliardi"). (*See generally* Gagliardi Aff.) There, Gagliardi avers that

Plaintiff purchased the exclusive commercial distribution rights to the Program but that "[a]t no time did [Plaintiff] sublicense the Program to [Defendants]." (*Id.* at *2, ¶ 3; Compl. ¶¶ 3, 29.) Gagliardi also submits an affidavit from Plaintiff's investigator, Aimetti, who asserts that he observed the unauthorized exhibition of the Program at Los Amigos while approximately twenty patrons were present. (Gagliardi Aff. at *3, ¶ 7; *see* Aimetti Aff. *19–20; Compl. ¶ 26.) Gagliardi notes that "to the best of [his] knowledge, [the] programing is not and cannot be mistakenly, innocently, or accidentally intercepted[]" because it "is encrypted" and requires Plaintiff's authorization in order for a commercial establishment to broadcast the signal. (Gagliardi Aff. *4, ¶ 9; Compl ¶¶ 24–25.) The Court, therefore, finds that Plaintiff has presented a legitimate cause of action against Los Amigos under either Section 553 or 605.

**2. Rodriguez**

To hold an individual defendant liable, a plaintiff must demonstrate that the defendant had: (1) "the right and ability to supervise the violative activity"; and (2) "a direct financial interest in the violation[.]" *J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (citations omitted). "Before granting default judgment, a district court may consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff falls short of establishing a cause of action against Rodriguez. Plaintiff provides no evidence that Rodriguez ordered the pirated Program, advertised the Program, or was present during the exhibition. *See Ramsey*, 757 F. App'x at 94 (affirming denial of default judgment against individual defendant where the plaintiff adduced no evidence that the individual defendant ordered the pirated telecast, advertised the telecast, or was present during the exhibition). Instead, Plaintiff alleges, upon information and belief, that Rodriguez: (1) "had the

right and ability to supervise the activities of Los Amigos"; (2) "specifically directed the employees of [Los Amigos] to unlawfully intercept, receive and broadcast Plaintiff's Program"; and (3) "had an obvious and direct financial interest in" the exhibition of the Program. (Compl. ¶¶ 11–14.) Plaintiff reaches these conclusions based on allegations that Rodriguez is an owner, officer, and license holder of Los Amigos. But "an ownership interest or [an officer role] alone is insufficient to establish liability." *Ramsey*, 757 F. App'x at 96. Moreover, the only license included in the record is a copy of what appears to be a 2016-2017 liquor license that was issued to Los Amigos and does not identify Rodriguez. (Ex. C to Peters Certif., ECF No. 16-1); *see Ramsey*, 757 F. App'x at 96 (observing individual liability may be imposed where the license identified the individual as an officer of the pirating business and "obligated [the individual] to supervise the activities of the business"). Thus, without more, Plaintiff's conclusory allegations are not sufficient to establish a cause of action against Rodriguez. The Court, therefore, denies Plaintiff's Motion to the extent it seeks to impose individual liability on Rodriguez.

**C. Default Judgment is Proper**

The three explicit factual findings required to grant a default judgment weigh in Plaintiff's favor. As noted above, the Court must consider: (1) "prejudice to the plaintiff if default is denied"; (2) "whether the defendant appears to have a litigable defense"; and (3) "whether [the] defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citation omitted).

Here, Plaintiff "suffers prejudice if it [does not] receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties." *Waldron*, 2013 WL 1007398, at *4 (citation omitted). The second "factor is either inconclusive, or it weighs slightly in Plaintiff's favor" because Defendants have not appeared in this matter and thus "there is no indication that Defendants have a cognizable defense to Plaintiff's allegations[.]" *Id.* (citation

omitted). Finally, Defendants' failure to respond permits the Court to draw an inference of culpability on their part. *See Tribiri-Tabara*, 2019 WL 2754955, at *3 ("When a defendant has failed to answer, move, or respond to a complaint, culpability is presumed."). The Court, accordingly, finds that default judgment is appropriate.

**D. Damages**

Section 605 permits a plaintiff to elect between actual and statutory damages. 47 U.S.C. § 605(e)(3)(C). If a plaintiff elects to seek statutory damages, it may recover an amount between $1,000 and $10,000. 47 U.S.C. § 605(e)(3)(C)(II). "The [c]ourt chooses an amount within these ranges that it 'considers just' under the circumstances." *J&J Sports Productions, Inc. v. Castro*, No. 14-557, 2015 WL 389381, at *3 (D.N.J. Jan. 28, 2015) (citing 47 U.S.C. § 605(e)(3)(C)(II)). "In addition, if the unauthorized reception of the communications was done 'willfully and for the purposes of direct or indirect commercial advantage or private financial gain,' the court has discretion to award 'enhanced damages,' increasing the range to $100,000[.]"[3] *Id.* (quoting 47 U.S.C. 605(e)(3)(C)(ii)).

Here, Plaintiff asserts that the cost to broadcast the Program at Los Amigos was $2,200. (Gagliardi Aff. ¶ 8.) Pursuant to Section 605, Plaintiff "requests $4,400.00 in statutory damages and $8,800.00 in enhanced statutory damages." (Pl.'s Moving Br. 10.) Plaintiff contends that the requested amounts "are necessary to serve the dual purposes of compensating Plaintiff and functioning as a deterrent against both these Defendants and others." (*Id.*) Other courts, however, have recently rejected similar requests made by Plaintiff in similar cases. *See G & G Closed Circuit Events, LLC v. La Famosa, Inc.*, No. 19-13025, 2020 WL 3129540 (D.N.J. June 12, 2020)

[3] Similarly, under Section 553, a court may award statutory damages between $250 and $10,000, and in the case of willful violations, up to $50,000 in enhanced damages. 47 U.S.C. § 553(c)(3).

(Wolfson, J.); *G & G Closed Circuit Events v. Don Tequila Bar & Grill, LLC*, No. 19-0084, 2020 WL 133033 (D.N.J. Jan. 13, 2020) (Bumb, J.).

In *La Famosa*, Plaintiff filed a complaint alleging that the defendants had unlawfully exhibited the same Program at a commercial establishment. 2020 WL 3129540, at *2. As in this matter, the cost to broadcast the Program was $2,200. *Id.* After the defendants failed to respond, Plaintiff moved for default judgment and requested $4,400 in statutory damages and $10,000 in enhanced damages. *Id.* at *4.

The *La Famosa* court declined to award the requested damages. In doing do, the court explained that "the Third Circuit has not established a formula for determining the appropriate amount of damages to be awarded for violations of Section 605[.]" *Id.* The court noted that "while registering its disagreement, [Plaintiff] concedes that courts in this district have looked to actual damages as the way to measure the appropriate amount of statutory damages to be awarded." *Id.* (collecting cases). The *La Famosa* court also noted that courts in this district have "concluded that the statutory damages, like actual damages, serve only a compensatory function, and the enhanced damages serve a deterrent function." *Id.* "Under the circumstances, statutory damages in the amount of the license fee that the defendants would owe to the plaintiff if they had properly licensed the program were appropriate." *Id.* (collecting cases). Consequently, the *La Famosa* court awarded Plaintiff $2,200 in statutory damages, the amount of the licensing fee. *Id.*

This Court reaches the same conclusion and will award Plaintiff $2,200 in statutory damages, an amount equal to the sublicense fee that an establishment of Los Amigo's capacity would have charged, rather than Plaintiff's request for double that amount. *Id.*; *see also Don Tequila Bar & Grill*, 2020 WL 133033, at *3 (declining to award Plaintiff $4,800 in statutory damages and instead awarding Plaintiff $1,600, which equaled Plaintiff's commercial license fee).

As to enhanced damages, courts consider whether: (1) "the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time"; (2) the defendant "reaped substantial profits from the unauthorized exhibition in question"; (3) "the plaintiff suffered significant actual damages"; (4) "the defendant advertised its intent to broadcast the event"; and (5) "the defendant levied a cover charge or significant premiums on its food and drinks because of the broadcast." *La Famosa*, 2020 WL 3129540, at *5 (citations omitted).

Here, the record contains no evidence that Defendants previously intercepted unauthorized broadcasts. Aside from conclusory allegations, Plaintiff also provides no evidence that Defendants advertised its intent to exhibit the Program. Nor does Plaintiff provide any evidence to support a finding that Defendants reaped substantial profits. On the night of the exhibition, Aimetti observed approximately twenty patrons at Los Amigos, which has a capacity for approximately eighty individuals. (Aimetti Aff. *19–20.) Aimetti does not indicate that Defendants levied premiums on its food and drinks but does note that Defendants did not charge a cover. (Aimetti Aff. *19–20.) Under similar circumstances, the *La Famosa* and *Don Tequila* courts awarded twice the amount of statutory damages as enhanced damages. *See La Famosa*, 2020 WL 3129540, at *5; *Don Tequila Bar & Grill*, 2020 WL 133033, at *4 (collecting cases). Consistent with those decisions, the Court will award Plaintiff $4,400 in enhanced damages.

In sum, the Court will award Plaintiff $6,600, consisting of $2,200 in statutory damages and $4,400 in enhanced damages. The Court finds that this amount will adequately compensate Plaintiff and serve as a deterrent to Los Amigos and others.[4]

[4] Plaintiff also seeks an award of costs and attorneys' fees under Section 605. (Pl.'s Moving Br. 24.) "Plaintiff respectfully requests that it be granted [thirty] days from the entry of any judgment herein to submit a request for costs and attorneys' fees. (*Id.*) The Court grants Plaintiff's request.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted in part. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE